UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
DEBORAH ALEXANDER, et al.,                :
                                          :
       Plaintiffs,                       :
                                          :
       v.                                :
                                          :
TAJH SUTTON, et al.,                      :
                                          :
       Defendants.                       :
------------------------------------------------------------------X

### DECLARATION OF MAUD MARON

I, Maud Maron, declare and state as follows:

1. I live in New York City, and have four children enrolled in the New York City public schools.

2. I serve as an elected member of New York City Community Education Council 2 ("CEC 2").

3. I am also a founder of PLACE, Parent Leaders for Accelerated Curriculum and Education NYC ("PLACE"), a group that advocates for improving the academic rigor and standards of K-12 public school curricula.

4. I am aware that CEC 14 has expelled and censored speakers at its public meetings for disagreeing with Defendants' viewpoints.

5. I am aware that CEC 14 adopted "Community Guidelines" containing the following "Absolute No's" to govern public comment, which appear in their December, 2023 meeting's minutes:

> This is not a space where we will tolerate antagonistic behavior or any of the following: homophobia, transphobia, misogyny,

ableism, racism, or any other forms of oppressive beliefs or behaviors. Anyone who violates this guideline will be removed.

There will be no name-calling of any community members in this space. If you violate this, you will be removed.

If you continually disrespect the community, you will be given 2 warnings before being removed.

6. I am aware that CEC 14 rewrote its rules as "Community Commitments," as noted in the minutes for their January 2024 public meeting, which read:

We are committed to intersectional solidarity.

We actively listen with the intent to understand, rather than respond.

We call each other in, and out when appropriate. We are all capable of harm and the degree of harm experienced dictates the tactic used.

Conflict is inevitable, and survivable, within community.

We embrace discomfort. We work to distinguish discomfort from harm. We work to create brave spaces in the hopes they are as safe as possible. We create the conditions to minimize harm and address harm when it happens whether verbal, behavioral or physical.

We watch our jargon and welcome teachable moments.

We believe those closest to the issues are closest to the solutions.

We distinguish between good faith dialogue and bad faith arguments.

We reserve the right to remove participants causing discord, spreading misinformation and/ or affiliated with hate groups. The DOE may not utilize this practice or standard, but we do.

7. I am aware that CEC 14 members have denounced PLACE and Moms for Liberty for having an alleged "segregationist agenda."

2

8. I am aware that CEC 14 has adopted a sign-in form to access its public meetings, which would require me to "commit to uphold the D14 Community Commitments."

9. I am blocked from reading and interacting with CEC 14's X account, @council_14. Below is a screenshot of what I see when trying to access CEC 14's X account:



10. Because I am blocked, I cannot even request permission to follow CEC 14, let alone read the account, or interact with CEC 14 and with those who can visit CEC 14's timeline.

11. On February 8, 2024, Nina Mickens emailed me "to make contact to schedule time to discuss D-210 complaints in which you are the subject."

12. On February 27, 2024, I responded, "Please let me know how many D-210 complaints you are referring to and provide copies of each complaint." I also asked to be told "if any complaints are dismissed prior to the discussion stage of this process."

13. On March 8, 2024, Mickens responded, "I am referring to one D-210 complaint. I cannot provide copies as the complainant details are confidential. The complaint is in reference to alleged discrimination related to comments made about the LGBTQI+ community."

14. I had been expecting D-210 complaints for expressing political views about transgenderism and race. On December 14, 2023, "The 74 Million" website published an article revealing and criticizing text messages that I (and others) had sent to a private WhatsApp group. Marianna McMurdock, *In private texts, NY Ed Council Reps, Congressional Candidate Demean LGBTQ Kids,* Dec. 14, 2023, https://perma.cc/QT3F-3R9Q. The article's sub-head read, "Officials call to remove elected parent leaders for remarks like 'there is no such thing as trans kids.' NYC Dept. of Ed calls comments 'despicable.'"

15. Among the statements the article highlighted, I had described the rapid rise in trans-identifying children as a "social contagion," and decried the use of drugs and medical procedures to change children's sex:

> There is no such thing as "trans kids" bc there is no such thing as transition i.e. changing your sex. No child can consent to the permanent changes being made to their bodies. . . .
>
> Adults should be free to drug & surgically modify their bodies as they choose. And have their civil rights respected but children should not be drugged or operated on.
> Puberty cannot be paused. And the use of Lupron and other powerful drugs on totally healthy kids have serious side effects include loss of bone density and serious cognitive side effects.
>
> Some of These kids never develop adult genitalia and will never have full sexual function.

4

> It's an abomination

16. I also criticized anti-racism in the disclosed texts. "The anti-racists are so racist." *Id.*

17. A DOE spokesperson has declared that my comments are "despicable" and "not in line with our values." *Id.* Chancellor Banks has directly threatened my position because he disagrees with my viewpoints. At a public meeting, Chancellor Banks stated, in reference to my texts, that he was "prepared . . . to take action because it is not acceptable to me, for that level of behavior, to continue to play out." *Id.* Banks has also been quoted as saying,

> One of the things I will tell you in the two years I have been chancellor that has been the greatest disappointment to me is to see on a daily basis an example of parents behaving badly. I've tried to give this some time to allow adults to be adults. But when you realize they refuse to do that . . . we are going to begin to take action.

Michael Elsen Rooney, *As tensions flare in parent councils, NYC sees a surge in misconduct complaints*, Chalkbeat New York, March 13, 2024, https://perma.cc/B7QN-3W39.

18. On March 20, 2024, Mickens emailed me to advise that she wanted to discuss another D-210 complaint with me, "about comments made about a DOE student." When prodded for more detail, Mickens wrote that "[t]his is related to a student at Stuyvesant HS."

19. My child is a student at Stuyvesant High School, and I serve on Stuyvesant's School Leadership Team.

20. On February 16, 2024, the student newspaper at Stuyvesant High School, *The Spectator*, published an anonymous full page editorial titled, "Black and White: The Withheld Story of Palestine and Israel." The editorial appeared in print, but to date, has not been published on the *Spectator*'s website.

21. The editorial accused Israel of "genocide," "apartheid," "ethnic cleansing," "crimes against humanity," "atrocities" dating to its founding, "slaughter[ing] peaceful protestors," and a "relentless murder spree" since the beginning of 2023, among other alleged outrages. But the editorial denied that the Hamas terrorist organization has tunneled under hospitals, and it failed to mention Hamas's October 7, 2023, invasion of Israel. The editorial referenced October 7 only in claiming that Israel has wronged Palestinians before and after that date, and in alleging that Gaza was "off the radar" before October 7.

22. Indeed, the editorialist added that he declined to "essentially headline with the fact that I condemn Hamas." The editorialist continued, "Though I refuse to condemn resistance or anyone before I condemn the oppressor, I do not justify any violence carried out against innocent civilians." It is thus unclear whether the editorialist believes that Hamas's "resistance" was directed at innocent civilians.

23. This anonymous editorial proved controversial. Many Stuyvesant parents sharply criticized the piece and everyone potentially involved with its publication. I am among these critics. I told the *New York Post*,

> The byline should read coward instead of anonymous. If you are going to repeat revolting Hamas propaganda and transcribe your ignorance and Jew hatred, put your name to it. Principal Yu should address the school and explain to Jewish students

6

why this factually inaccurate bile was published on the school paper anonymously.

Jon Levine and Aneeta Bhole, *NYC's Stuyvesant HS newspaper accuses Israel of 'genocide' while whitewashing Hamas' massacre*, New York Post, Feb. 24, 2024, https://perma.cc/RNG7-8QZP.

24. My comments did not identify the editorial's author, as I do not know the author's identity nor have I ever claimed to know it. Indeed, because the editorial was anonymous, I do not know whether the author was a student, a staff member, or some other person.

25. In any event, I reasonably believe that Mickens is investigating me under Regulation D-210 for my criticism of the anonymous editorialist that appeared in the *New York Post*.

26. Mickens has persistently tried to speak with me as part of her D-210 investigations, even after this lawsuit was filed. As recently as April 1, 2024, she emailed to tell me that "the investigations will move forward." Exhibit H is a true and correct copy of Mickens' last email to me.

27. I also reasonably fear that another D-210 complaint against me is in the works. On March 20, 2024, CEC 2 approved a resolution I introduced by a vote of 8-3: Resolution # 248, "Resolution Calling for a Comprehensive Review and Redrafting of NYCPS Guidelines on Gender with Regard to the Application and Impact on Female Athletes Participating in Physical Education, Intramural and Competitive Public School Athletic League (PSAL) Sports."

28. The resolution resolved that CEC 2

> respectfully requests that NYCPS immediately convenes a Gender Guidelines review committee which:
>
> 1. Includes NYC PSAL female athletes, parents, coaches, relevant medical professionals and evolutionary biology experts; and
>
> 2. Is authorized to propose amendments, changes and additions to the Gender Guidelines which are the result of an inclusive, evidence-based process concerning the impact on female athletes when the category of sex is replaced by gender identity.

29. Chancellor Banks condemned this resolution as "despicable" and "hateful," and my political opponents have reportedly threatened to take action against those who voted in its favor.

30. Considering that I am already facing a D-210 investigation over my comments critical of gender theory, and that Chancellor Banks has threatened me over that dispute, Banks's condemnation of Resolution 248 and the threats to the resolutions' supporters reasonably suggests to me that Mickens will soon investigate me for supporting the resolution, and that I will face continuing D-210 complaints and investigations if I even so much as ask, as Resolution 248 does, for any reconsideration or inquiry into the DOE's gender policies.

31. I intend to and would participate in CEC 14's public board meetings, to express my views during the public comment periods on the full range of subjects before that board, whether Defendants Sutton, Manzanares, or anyone else agrees with them or not. I reasonably expect to disagree with Defendants' views on educational policies, curricula, the school budget, school personnel and

administration, anti-Semitism, Israel, anti-racism, gender ideology, and "diversity, equity, and inclusion."

32. I also intend to criticize the competence of CEC 14 members, including Defendants Sutton and Manzanares, and of other New York City school officials and employees. For example, I would criticize Defendants for their treatment of public speakers, for conducting meetings virtually instead of in-person, and for their blocking members of the public from accessing CEC 14's social media presence. I would also criticize Defendants for violating the law by not holding meetings on various months, for not keeping or publishing minutes of the July 2023 meeting at which they presumably passed the CEC 14 budget, and for using CEC 14 resources to promote their personal politics.

33. However, I am chilled from speaking at CEC 14 public meetings as I intend. I have not attempted to access CEC 14's public board meetings because I believe I am barred owing to my views. I believe I am also barred owing to my associations with PLACE and with Moms for Liberty, since Defendants declare that they won't allow people "affiliated with hate groups" to attend, and a CEC 14 resolution alleges that PLACE is "segregationist."

34. I also refrain from trying to access CEC 14's public board meetings because I do not wish to subscribe to the "community commitments" as required by the entry form. And I reasonably fear that I would be interrupted, censored, subject to discriminatory treatment, and expelled owing to my viewpoints under CEC 14's

9

"community commitments" and "community guidelines" speech codes, and under Article IV, Section 2 of CEC 14's bylaws, which prohibits me from criticizing people.

35. I also intend to, and would, interact with CEC 14's X account by responding to CEC 14 posts and the posts of others conducting discussions under CEC 14's timeline, but I am barred from doing so because Defendants limit account access to approved followers, and have blocked me from the account.

36. I am acutely aware of the proliferation of D-210 complaints—reportedly, over 36 such complaints have been filed this school year already, compared to five filed last year. *See* Rooney, *supra*, https://perma.cc/B7QN-3W39.

37. The threat of D-210 complaints being filed against me in retaliation for expressing my political views has chilled my expression, causing me to alter my public and even private speech. I would speak more, and speak differently than I do now, but for the threat that my words will trigger investigation and removal from office because Defendants and their ideological allies would find them unacceptable. Although I continue to speak regularly about controversial issues, the threats posed by Regulation D-210 weigh on me, and at times impact my choice of words, the viewpoints I discuss, and the frequency of my speech, including my introduction of resolutions, debate, and voting on CEC 2.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 10, 2024.

_____
Maud Maron