UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X
DEBORAH ALEXANDER, et al.,                                  :
                                                            :
       Plaintiffs,                                          :
                                                            :
       v.                                                   :
                                                            :
TAJH SUTTON, et al.,                                        :
                                                            :
       Defendants.                                          :
------------------------------------------------------------X

### DECLARATION OF NOAH HARLAN

I, Noah Harlan, declare and state as follows:

1. I live in New York City, and have two children enrolled in the New York City public schools.

2. I serve as an elected member of New York City Community Education Council 1 ("CEC 1").

3. Community Education Council 14 ("CEC 14") has used its official resources to encourage students to walk out of their classes on November 9, 2023. The walkout's purpose was to demonstrate against Israel.

4. Defendant CEC 14's official Instagram page called for participation in this demonstration, and linked to a "toolkit," which included extensive calls for specific political action. Exhibit A is a true and correct copy of a post that appeared on CEC 14's official Instagram account, @cecd14, which called for participation in this demonstration and linked to a "toolkit" including extensive calls for political action.

5. Exhibit B is a true and correct copy of the toolkit to which CEC 14's Instagram account linked.

6. Exhibit C is a true and correct copy of a page of suggested chants linked from the toolkit.

7. I am aware that CEC 14 has expelled and censored speakers at its public meetings for disagreeing with Defendants' viewpoints.

8. I am aware that CEC 14 adopted "Community Guidelines" containing the following "Absolute No's" to govern public comment, which appear in their December, 2023 meeting's minutes:

> This is not a space where we will tolerate antagonistic behavior or any of the following: homophobia, transphobia, misogyny, ableism, racism, or any other forms of oppressive beliefs or behaviors. Anyone who violates this guideline will be removed.
>
> There will be no name-calling of any community members in this space. If you violate this, you will be removed.
>
> If you continually disrespect the community, you will be given 2 warnings before being removed.

9. I am aware that CEC 14 rewrote its rules as "Community Commitments," as noted in the minutes for their January 2024 public meeting, which read:

> We are committed to intersectional solidarity.
>
> We actively listen with the intent to understand, rather than respond.
>
> We call each other in, and out when appropriate. We are all capable of harm and the degree of harm experienced dictates the tactic used.
>
> Conflict is inevitable, and survivable, within community.

> We embrace discomfort. We work to distinguish discomfort from harm. We work to create brave spaces in the hopes they are as safe as possible. We create the conditions to minimize harm and address harm when it happens whether verbal, behavioral or physical.
>
> We watch our jargon and welcome teachable moments.
>
> We believe those closest to the issues are closest to the solutions.
>
> We distinguish between good faith dialogue and bad faith arguments.
>
> We reserve the right to remove participants causing discord, spreading misinformation and/ or affiliated with hate groups. The DOE may not utilize this practice or standard, but we do.

10. My political views tend to conflict with those held by Sutton and Manzanares. Although I have never been a PLACE member, and I do not share all of that group's views, the group has endorsed my CEC candidacies.

11. I tried to join CEC 14's January 24, 2024 public meeting. Admission to that public meeting required people to fill out a form, requiring them to affirm that "By registering I commit to uphold the D14 Community Commitments. These will be announced at the start of every meeting." A true and correct copy of the registration form is attached hereto as Exhibit F.

12. Although I filled out the form as required, I was left in the waiting room, then refused admission. I believe I was blocked on account of my political views. When I tried to rejoin the meeting, I was excluded again because I was blocked by the host. Below is a screenshot of the message excluding me:

3



13. CEC 14 maintains a social media account on X (formerly Twitter), @council_14, through which it communicates to the public, and by which it creates a forum for public comment. However, CEC 14's X account is currently locked—meaning, only people approved by CEC 14 can follow the account, read and comment on CEC 14's posts, and share those posts with their own audiences. Below is a screenshot of what a non-approved person sees when trying to read or otherwise interact with CEC 14's X account:



4

14. I have asked CEC 14 to approve me to follow its X account. That request has remained pending now for several months. Accordingly, I cannot read the account, or interact with CEC 14 and with those who can visit CEC 14's timeline.

15. I intend to and would participate in CEC 14's public board meetings, to express my views during the public comment periods on the full range of subjects before that board, whether Defendants Sutton, Manzanares, or anyone else agrees with them or not. I reasonably expect to disagree with Defendants' views on educational policies, curricula, the school budget, school personnel and administration, anti-Semitism, Israel, and anti-racism.

16. I also intend to criticize the competence of CEC 14 members, including Defendants Sutton and Manzanares, and of other New York City school officials and employees. For example, I would criticize Defendants for their treatment of public speakers, for conducting meetings virtually instead of in-person, and for their blocking members of the public from accessing CEC 14's social media presence. I would also criticize Defendants for violating the law by not holding meetings on various months, for not keeping or publishing minutes of the July 2023 meeting at which they presumably passed the CEC 14 budget, and for using CEC 14 resources to promote their personal politics.

17. However, I am chilled from speaking at CEC 14 public meetings as I intend. I refrain from trying to access CEC 14's public board meetings, because Defendants have expelled me before on account of my views and have subsequently barred my entry attempts. I also suspect that even though I am not a PLACE

member and did not solicit its endorsements, Defendants have barred me because PLACE has endorsed me, since they declare that they won't allow people "affiliated with hate groups" to attend, and a CEC 14 resolution alleges that PLACE is "segregationist."

18. I also refrain from trying to access CEC 14's public board meetings because I do not wish to subscribe to the "community commitments" as required by the entry form. And I reasonably fear that I would be interrupted, censored, subject to discriminatory treatment, and expelled owing to my viewpoints under CEC 14's "community commitments" and "community guidelines" speech codes, and under Article IV, Section 2 of CEC 14's bylaws, which prohibits me from criticizing people.

19. I also intend to, and would, interact with CEC 14's X account by responding to CEC 14 posts and the posts of others conducting discussions under CEC 14's timeline, but I am barred from doing so because Defendants limit account access to approved followers, and they have not permitted me to access the CEC 14 account.

20. I am acutely aware of the proliferation of D-210 complaints—reportedly, over 36 such complaints have been filed this school year already, compared to five filed last year. *See* Michael Elsen Rooney, *As tensions flare in parent councils, NYC sees a surge in misconduct complaints*, Chalkbeat New York, March 13, 2024, https://perma.cc/B7QN-3W39.

21. The threat of D-210 complaints being filed against me in retaliation for expressing my political views has chilled my expression, causing me to alter my

public and even private speech. I would speak more, and speak differently than I do now, but for the threat that my words will trigger investigation and removal from office because Defendants and their ideological allies would find them unacceptable.

22. I have been accused by fellow CEC 1members of all kinds of monstrous speech when advocating for policies like accelerated education and for the communities that want or participate in those programs. Although I continue to speak regularly about controversial issues, the threats posed by Regulation D-210 weigh on me, and at times impact my choice of words, the viewpoints I discuss, and the frequency of my speech, including my introduction of resolutions, debate, and voting on CEC 1.

23. As the CEC member who twice received the most votes in lower Manhattan's very diverse District 1 because of my views and positions on issues of importance to the parents in my community, Regulation D-210 jeopardizes my ability to represent the people who elected me to this position. It's an abomination that Regulation D-210 curtails my ability to vociferously represent my community and the people who entrusted me to advocate on their behalf.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 24, 2024.

_____
Noah Harlan