

**HON. SYLVIA O. HINDS-RADIX**
*Corporation Counsel*

**T**HE **C**ITY OF **N**EW **Y**ORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**JORDAN DOLL**
Tel.: 2l2-356-2624
email: jdoll@law.nyc.gov

April 17, 2024

Hon. Diane Gujarati
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    *Alexander et al. v. Sutton et al.*
              24-cv-02224 (DG)(JRC)

Dear Judge Gujarati:

      I am an Assistant Corporation Counsel in the office of the Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, attorney for Defendants New York City Department of Education ("DOE") and DOE Chancellor David C. Banks (collectively "DOE Defendants") in the above-captioned matter. Pursuant to Your Honor's Order of April 16, 2024, I write to respond to Plaintiffs' Motion for an Order to Show Cause (ECF No. 13) (the "Motion").

      The proposed Order to Show Cause seeks a temporary restraining order and preliminary injunction "Restraining Defendants and those acting in concert with them," from:

(1) discriminating against speakers at Community Education Counsel ("CEC") 14's public meetings on the basis of viewpoint and political association, including but not limited to the enforcement of CEC 14's "Community Guidelines," "Community Commitments," and Article IV, § 2 of CEC 14's By-Laws;
(2) restricting access to CEC 14's official X account to users approved by Defendants;
(3) blocking access to CEC 14's official X account based upon users' viewpoints and political associations; and
(4) implementing or enforcing DOE's Regulation D-210, including conducting any investigation or disciplining or removing from office any Community Education

Council[1] or Citywide Council member on the basis that the accused engaged in "frequent verbal abuse and unnecessary aggressive speech that serves to intimidate and causes others to have concern for their personal safety," Reg. D-210, § II.C, or expressed "disrespect towards children," *id.* § II.D, or "derogatory or offensive comments about any DOE student," *id.*, or speech "that would publicly reveal, share or expose private or personally identifiable information about a DOE student or a member of such student's family without their consent," *id.* § II.E[.]

At this juncture, this Office cannot respond to items 1-3 (which are directed at Defendants Sutton (the President of CEC 14), Manzanares (the Vice President of CEC 14), and CEC 14 due to outstanding representation determinations concerning these Defendants. As explained more fully in DOE Defendants' letter requesting an extension of time to respond to the Complaint (ECF No. 18), the Corporation Counsel's representation of the non-DOE Defendants is governed by the N.Y. Education Law and the General Municipal Law, and must among other things account for any potential conflicts of interest between and among the various Defendants. At this time, however, this Office has not yet completed its investigation of the many allegations contained in the Complaint, nor spoken with Defendants Sutton and Manzanares, neither of whom have yet requested representation from this Office. Until this Office has had sufficient time to explore these allegations and interview the non-DOE Defendants, it is not in a position to make the required representation decisions or, consequently, to respond to Plaintiffs' Motion on their behalf. However, as noted in my letter of April 16, 2024, neither Defendant Sutton nor CEC 14 has been properly served and thus this Court lacks personal jurisdiction over them.

While DOE Defendants do not endorse or condone discrimination, Plaintiffs' request for an unqualified injunction that would seemingly allow speakers at CEC 14 meeting the unrestricted ability to speak and to have access to CEC's X (formerly Twitter) account, notwithstanding the content or impact of their speech or posted comments, appears to sweep too broadly and requires further legal research regarding the contours of protected speech.

With respect to the fourth item of relief in the proposed Order to Show Cause, DOE Defendants oppose Plaintiffs' attempt to have this Court enjoin DOE's investigations of possible violations of Chancellor's Regulation D-210, or efforts to enforce that Regulation.[2] Pursuant to NY Education Law § 2590-h(16), the DOE Chancellor, as the superintendent of schools and the chief executive officer for the City school district, has the power and duty to "[p]romulgate such rules and regulations as he or she may determine to be necessary or convenient to accomplish the purposes of this act, not inconsistent with the provisions of this article and the city-wide educational policies of the city board." Consistent with his authority under §§ 2590-h(16) and

---

[1] By way of brief background, Community Education Councils (CECs) are established pursuant to NY Education Law § 2590-b(2)(a), which provides that there shall be one CEC for each community district. Pursuant to NY Ed L. § 2590-c, CECs "consist of twelve voting members and two non-voting members[.]"

[2] *See New York City Department of Education*, "D-210 – Citywide and Community Education Council Code of Conduct and Complaint Procedures: Anti-Discrimination and Anti-Harassment Policy," https://www.schools.nyc.gov/docs/default-source/default-document-library/d-210.pdf (Dec. 22, 2021).

2590-l, the Chancellor promulgated, and New York City's Panel for Education Policy approved, Chancellor's Regulation D-210. *See New York City Department of Education*, "D-210 – Citywide and Community Education Council Code of Conduct and Complaint Procedures: Anti-Discrimination and Anti-Harassment Policy," https://www.schools.nyc.gov/docs/default-source/default-document-library/d-210.pdf (accessed Apr. 17, 2024).

Chancellor's Regulation D-210 promotes a safe and functional environment for parents to engage and contribute to education policy. As stated in the regulation:

> The New York City Department of Education ("DOE") recognizes that parent leadership and engagement is the cornerstone of DOE schools. It is the policy of the DOE to develop and maintain a positive and supportive environment for elected and appointed parent leaders that is free of discrimination, harassment, bias, racism, and intimidation. The DOE is committed to the treatment of all parents with respect and dignity and the provision of opportunities for fair and just participation and parent engagement. The DOE is committed to affirming diverse racial, linguistic and cultural identities in parent leadership, elevating and centering historically marginalized voices, and empowering parents as agents of social change.

*See* D-210 (Introduction).

Chancellor's Regulation D-210 is neutral and does not discriminate on viewpoint or political association. *See* D-210(II)(A-D) (restrictions on speech at issue are limited to prohibiting discriminatory and harassing conduct, or derogatory comments to students). *See also* D-210(II)(E) (restriction is related to protecting student Personal Identifying Information ("PII") consistent with FERPA). It seeks to ensure that CEC members, in the performance of their powers and duties as set forth in Education Law § 2590-e, which may involve interacting with members of elementary and middle school communities, including students, "fulfill their responsibilities in a way that respects the rights of all parents and students they serve." D-210 (Introduction).

Plaintiffs object to the investigation and discipline procedures promulgated in D-210. However, the conduct of CECs may be regulated consistent with the First Amendment. A CEC member who "willfully, intentionally or knowingly interfered with or was involved in the hiring, appointment or assignment of employees other than as specifically authorized in this article" may be subject to removal and permanent disqualification from serving on a CEC. NY Educ. Law § 2590-l(2-a). The Second Circuit struck down a challenge to this restriction on First Amendment grounds, finding, among other things, that the restriction was content neutral and served a compelling interest. *Warden v. Pataki*, 35 F. Supp. 2d 354, 364–65 (S.D.N.Y.), *aff'd sub nom. Chan v. Pataki*, 201 F.3d 430 (2d Cir. 1999). See also *Dillaplain v. Xenia Cmty. Sch. Bd. of Educ.*, No. 3:13-CV-104, 2013 WL 5724512, at *5 (S.D. Ohio Oct. 21, 2013).

Simply put, Plaintiffs have not shown any legal or factual basis to support their request that this Court inject itself into DOE's internal investigative and enforcement process and prohibit DOE from promoting a safe and respectful environment at meetings. Moreover, should a person be the

subject of an adverse finding and enforcement, they have recourse to challenge such actions. *See* D-210(IV); *see generally* NY Educ. Las § 2590-l(1)(b). In contrast, were the proposed TRO and PI granted, speakers at CEC meetings would be permitted to engage in verbal abuse, aggressive, intimidating, derogatory, offensive, disrespectful and threatening speech without fear of investigation, reprimand or discipline by DOE. Such relief goes too far.

For the reasons set forth above, DOE Defendants oppose the issuance of a TRO and PI. Should the Court not deny Plaintiffs' motion outright, DOE Defendants respectfully request three weeks in which to submit opposition papers.

        Respectfully Submitted,

        /s/ Jordan Doll
        Jordan Doll
        Assistant Corporation Counsel

cc: All counsel of record
    (via ECF)