# EXHIBIT J



June 14, 2024

**VIA EMAIL**
Maud Maron, Member
Community Education Council for District 2 ("CEC 2")
maudmaron@gmail.com

Re: Case D210-2024-009

Dear Ms. Maron:

On February 16, 2024, *The Spectator*, Stuyvesant High School's student newspaper, printed an anonymous student opinion piece called "Black and White: The Withheld History of Palestine and Israel." On February 24, 2024, *The New York Post* published an article discussing the opinion piece in which you were quoted as saying: "The byline should read coward instead of anonymous. If you are going to repeat revolting Hamas propaganda and transcribe your ignorance and Jew hatred, put your name to it."

Several complaints regarding your statement were received by the Office of Family and Community Engagement ("FACE"), and an investigation was initiated under Chancellor's Regulation D-210 ("D-210"). Witnesses were interviewed and evidence was collected and reviewed. After several attempts were made to schedule an interview with you, you were advised that if you did not respond by March 29, 2024, the investigation would proceed without your participation. You did not respond and did not participate in the investigation.

The investigation found that your statement to the *Post* constituted conduct involving derogatory and offensive comments about a student, and unnecessary aggressive speech that served to intimidate and cause others to have concern for their personal safety. Your statement was further found to have created a foreseeable risk of disruption within the district and school community, especially in light of the highly public forum in which it was made.

On April 17, 2024, a determination in this case was issued, concluding that you had engaged in conduct that constituted a violation of D-210(II)(C)&(D) and ordering you to cease engaging in such conduct. On April 18, you sought clarification regarding "what words you want me to stop saying," and FACE responded on the same day that the determination was based on your comments in the February 24, 2024 *Post* article, and identified such comments.

You were provided an opportunity to engage in a conciliation to respond to the D-210 determination you received. The conciliation was initially scheduled for May 1, 2024 after you indicated that you would not be available until after spring recess. On April 29, 2024, you requested that it be rescheduled, and the conciliation was rescheduled for May 13, 2024. On May 10, 2024, you stated that you needed to reschedule the conciliation to accommodate your attorney's availability. The conciliation was rescheduled to May 21, 2024.

You attended the conciliation accompanied by your attorney Dennis Saffran and parent witness Yael Denbo. Also in attendance at the conciliation were First Deputy Chancellor Daniel Weisberg, Deputy Chancellor of Family and Community Engagement and External Affairs Kenita Lloyd, FACE Executive Director Cristina Melendez, General Counsel Liz Vladeck, and Executive Deputy Counsel Toni Gantz. At the conciliation, Deputy Chancellor Lloyd reviewed the basis for the D-210 determination, including reciting your statement to the *Post* and describing the findings of the investigation and the provisions of D-210 that your conduct was deemed to have violated.

In response, you referred to antisemitism in schools and my testimony at a May 6, 2024 congressional hearing on the topic, saying that your "referencing Jew hatred" in your statement to the *Post* was no different than my identifying statements such as "from the river to the sea, Palestine will be free" as anti-Semitic. You noted that Jewish parents thanked you for your words and that some parents and students who were with you in Washington, D.C. to watch the hearing felt supported by your statement.

Your attorney stated that the "entire gravamen of this D-210 complaint" is "at cross-purposes" of what I testified about before Congress, and compared the student opinion piece to encampments on university campuses, claiming it created unsafe conditions.

You credited *The Spectator* with subsequently correcting inaccurate information in the opinion piece. You asserted that such inaccuracies were the result of Stuyvesant's pedagogy and years of "colonial Marxist education in our schools." You stated that *The Spectator* deviated from its own regulations in publishing the piece anonymously and asked whether that was being investigated.

You ultimately stood by and defended your statement, and noted that the high standards you hold for yourself should also be held for students at *The Spectator*.

I have considered your response. I have also considered publicly available information, including *The Spectator*'s March 14, 2024 [response](#) to criticism regarding the student opinion piece and the [comments to the *Post* article](#) in which your statement was published.

*The Spectator*'s response, while stating that the opinion piece does "not reflect the opinions of the Editorial Board" and while correcting certain factual inaccuracies in the piece, notes that *The Spectator* had published many other articles about the Middle East conflict following October 7, including pieces published anonymously. *The Spectator* stated that the piece was written by a Stuyvesant student, and that the decision to withhold one's name when publishing is permitted "to allow for freedom of expression while ensuring the safety of writers." The response further noted:

> Current political tensions have created an unsafe environment for students to share their opinions, and many have felt that doing so would put them at risk of being personally targeted.
>
> Should *The Spectator* have chosen not to publish the article, it would have censored a critical student voice. It was published on the basis that its opinion was not hate speech, and therefore did not violate *The Spectator*'s charter. The article's opinion is representative of a Stuyvesant student's voice on the conflict, and as such, we chose to preserve it.

*The Spectator* further invited readers to "respond to articles through Letters to the Editor in order to hold a more substantial and open discussion on the content of any article," reminding readers that *The Spectator* is a forum for communication for the Stuyvesant community, and specifically imploring individuals who disagreed with the content of the opinion piece to write a Letter to the Editor (and providing the email address for such letters). Finally, the response reminded readers "to be kind and empathetic amidst these tragedies" and "use your voice considerately."

The *Post* article in which your statement was published generated over 300 comments, many about the student author and Stuyvesant students at large. In addition to referring to Stuyvesant students and/or the author as "[l]ittle arrogant ig[n]oramuses," "anarchists," "liars," "haters," "spoiled brats," and "cowards," the comments contained a number of highly aggressive, threatening statements, including:
- "Who are these students? Publish their face so companies know about their evil and hate so they can decide to hire them or not."
- "Years ago, a bunch of students invited Dr. Kevorkian to one of their classes. There must be a modern-day version of him that they can bring back and put these anonymous editorial writers out of their misery."
- "They know EXACTLY [who] wrote this terrorist supporting screed. Name names. Expose the v^3M(n to the light."
- "In the age of the internet; may these dogs be hunted down"
- "In the West Bank they string traitors up on lamp posts. Maybe we can bring a little of that Middle East culture here?"
- "I LOVE ISRAEL. I HATE PALESTINIAN CIVILIANS, REGARDLESS OF AFFILIATION. I WISH IMMEDIATE HARM ON THOSE MINORS INVOLVED IN THE PRODUCTION OF THIS ARTICLE."

I note that in addition to being a CEC 2 member, you are a parent of a Stuyvesant student and a member of Stuyvesant's School Leadership Team (as is also noted in the *Post* article). You had several channels available to you to communicate your concerns and disagreement with the student's opinion piece, and you chose to publish an unnecessarily aggressive, derogatory, and offensive comment about a student in an inflammatory *Post* article about the piece. Unsurprisingly, the *Post* article generated precisely the type of reactions that *The Spectator* cited as a reason for allowing articles to be published anonymously. Your statement specifically was echoed in many of the hostile, intimidating comments accompanying the *Post* article.

3

Rather than recognize the inappropriateness of your statement, you defended it, and even equated your statement with my testimony that the phrase "from the river to the sea, Palestine will be free" is experienced as anti-Semitic. But my testimony at the hearing and my consistent position that we will not tolerate antisemitism or any other form of hate or bigotry in our schools is wholly distinguishable from calling a student a coward or ignorant, or ascribing "Jew hatred" to that student. In other words, naming and standing against antisemitism is absolutely not the same as engaging in a character attack on an individual student.

It is axiomatic that parent leaders who represent our school communities and serve our parents and students do not engage in conduct that serves to intimidate or causes others to have concern for their personal safety, and do not engage in attacks on our students. As was also noted by First Deputy Chancellor Weisberg at the conciliation, at the heart of this determination is a finding that you engaged in a public, personal attack against a student. You did so in the context of an issue that is highly politically charged, in a climate in which harassment and targeting of those who express unpopular opinions is common, and in a tabloid publication whose articles often provoke extreme reactions. Predictably, your conduct provoked a number of other highly offensive and hostile attacks against the anonymous student author and Stuyvesant students in general.

Based on my review and for the reasons set forth above, I find the appropriate disciplinary action is your removal from CEC 2 for the remainder of the current term. You may not serve on CEC 2 during this removal period.

Accordingly, pursuant to my authority under Section 2590-l of the Education Law, I am removing you as a member of CEC 2 through June 30, 2025, effective immediately.

IT IS SO ORDERED.

*David C. Banks* (signature)

David C. Banks
Chancellor

cc: Kenita Lloyd
　　 Liz Vladeck
　　 Toni Gantz
　　 Cristina Melendez