

June 14, 2024

**VIA EMAIL**
Tajh Sutton, President
Community Education Council for District 14 ("CEC 14" or "Council")
215 Heyward Street, Room 238
Brooklyn, NY 11206
cec14@schools.nyc.gov
tajhcec14@gmail.com

Dear Ms. Sutton:

On April 17, 2024, I issued an order, dated April 16, 2024, regarding New York Open Meetings Law ("OML") and New York Education Law violations by you and CEC 14, including your inappropriate involvement in a personnel matter at the Brooklyn Arbor Elementary School (14K414, "Brooklyn Arbor"). I directed you to appear for a conciliation, which was then scheduled for May 6, 2024.

You attended the conciliation accompanied by New York City Council Member Jennifer Gutiérrez, Deputy Public Advocate Elizabeth Kennedy, State Senator Salazar's representative Emely Rodriguez, and parent witness Jess Baker. In attendance with me at the May 6 conciliation were Deputy Chancellor of Family and Community Engagement and External Affairs Kenita Lloyd, FACE Executive Director Cristina Melendez, General Counsel Liz Vladeck, and Executive Deputy Counsel Toni Gantz. You were provided an opportunity to respond to the order, as well as an opportunity to respond to an April 17, 2024 determination finding you in violation of Chancellor's Regulation D-210 ("D-210").

After the May 6 conciliation, a second conciliation was held to provide you a further opportunity to present any additional information you wanted me to consider. Per your request, that conciliation was scheduled for May 28, 2024, after you did not appear on the initially scheduled date (May 21, 2024). You attended the May 28 conciliation accompanied by Shoshana Brown, Elizabeth Kennedy, Sophie Ellman Golan, and Jessica Franco. Also in attendance were Deputy Chancellor Lloyd, Executive Deputy Counsel Gantz, and Chief of Staff for the Division of Family and Community Engagement and External Affairs Katie Jedrlinic.

At each conciliation, Deputy Chancellor Lloyd reviewed with all present the bases of the April 16 order and D-210 determination.

1

To briefly summarize, the April 16 order outlined CEC 14's longstanding and persistent non-compliance with the OML, and its non-compliance with certain Education Law requirements, including its failure to hold monthly public meetings several months this year, and its failure to timely fill vacancies. It also described numerous complaints by parents and community members about the exclusion and removal of participants from CEC 14's meetings. The order further discussed your inappropriate involvement with a Brooklyn Arbor personnel matter; the Education Law prohibits CEC members from intentionally or knowingly interfering with or getting involved in the assignment of employees, and doing so is a ground for permanent disqualification from serving on a CEC.

The D-210 determination followed an investigation of complaints about CEC 14's social media posts, its promotion of a November walkout in support of a ceasefire in Gaza, and its alleged exclusion, removal, or blocking of individuals from its meetings and social media accounts based on their Jewish and/or Israeli identity. It was determined that there was a reasonable basis to conclude that you had engaged in conduct that violated D-210 based on your dissemination, through CEC 14's social media account, of materials containing harassing and discriminatory content in connection with the walkout. Specifically, CEC 14 disseminated a link to a toolkit that included protest chants such as "From the river to the sea, Palestine will be free" and "Say it loud, say it clear; We don't want Zionists here." This conduct violated D-210's prohibition of engaging in conduct that subjects any person or entity to discrimination or harassment on the bases set forth in the regulation, which include religion, creed, ethnicity, and national origin.

I will briefly discuss the points you raised in response at the conciliations and in your written submissions.

Regarding OML non-compliance, you have repeatedly expressed that you and other CEC 14 members have been meeting virtually due to safety concerns. You described that following October 7, 2023, you have been the target of harassment, doxxing, and threats, including receiving feces mailed to you at the district office and receiving misogynistic and racist messages. You also cited an incident in November 2023 in which CEC 14 Vice President Marissa Manzanares was verbally accosted by parents during a Brooklyn Arbor Parent Association meeting. You have attributed the harassment that has been directed to you and the Council to the "culture created" by the Brooklyn Arbor principal and District 14 and NYCPS leadership; the involvement of non-NYCPS external groups such as Moms for Liberty, PLACE NYC, and NYCPS Alliance; and "false [and] inflammatory" articles about CEC 14 in *The New York Post*. You cited "a coordinated effort between Zionists and right wing entities across the country to attack, endanger and irreparably damage the reputations and livelihoods of pro Palestine parents, educators, student groups, community leaders and organizations including anti Zionist Jews."

Other reasons you gave for the Council's fully virtual meetings are the COVID-19 pandemic, a lack of technical support, and "vacancies fostered by a violent school governance system NYCPS refuses to address." You rejected the supports that NYCPS has offered, which have included providing increased security at meetings and appointing trustees to the Council (which would also facilitate the Council's ability to hold hybrid meetings). You noted that you do not want the Council to conduct hybrid meetings and that CEC 14 would meet either fully virtually or fully in person.

2

You disagreed that CEC 14 is not effectively conducting business, asserting that the Council hosted Black Lives Matter events in two District 14 schools during February, incorporated a fair student funding presentation in its April meeting, and drafted new resolutions.[1] You asserted that the Council has "managed to be a support to our community while under attack, with no support from you."

Regarding the Brooklyn Arbor personnel matter, you defended your involvement, which you said was at the request of and in support of Brooklyn Arbor parents. You disputed the characterization of the March 2024 protests at Brooklyn Arbor, stating that they consisted of peacefully holding signs and flowers and hugging the Brooklyn Arbor employee. You asserted that the Brooklyn Arbor employee was experiencing discrimination. You also referred to "the disgusting school climate of racism and censure at Brooklyn Arbor," stating that it "is absolutely our job to support parents witnessing racism and harassment and being silenced." Moreover, you noted your advocacy for the retention of a District 14 Restorative Justice Coordinator position in 2022, which did not result in a finding of any violation or any enforcement action.

Regarding the D-210 determination, you asked about the basis for the finding and which language specifically was considered discriminatory and harassing. When the language was identified, you disputed that such phrases were discriminatory or harassing. You also claimed that I "stood with Israel," that school communities "won't say 'Palestine,'" and that there is a "gag order on educators." In addition, you stated that CEC 14's promotion of the November 9 walkout was treated inconsistently with how NYCPS treated a student-led climate march.

At both conciliations and in your written submissions, you recited the demands you have repeatedly made: an in-person meeting with me; an "acknowledgment of [my] harmful and exclusionary November 8th email the night before a student-led walkout"; and a "safety plan that comprises more than just throwing police at problems and creates space for education, healing and restorative justice that does not center privileged parties."

Finally, you expressed that New York Education Law 2590-l and D-210 were being applied in a discriminatory way. You stated that "known hate group members" are on CECs and have not been found in violation of D-210. You stated that you have filed D-210 complaints against people who have harassed you, and that nothing happened as a result. You wrote: "This. Is. Discrimination. Not only against this council and myself in particular, but also against Arbor community members, including anti Zionist Jews, Muslims, Arabs, South Asian and Palestinian families who continue to experience harassment, harm and erasure due to your viewpoint discrimination."

I have carefully considered all of the submissions, verbal and written, that you submitted as your response to my order.

First, I want to strongly condemn the hateful, aggressive messages that have been directed against you in connection with your CEC service. It is completely unacceptable for any member

---

[1] I note that the Council has not posted any meeting or agenda minutes on its website since January 2024 so it is unclear what items were discussed at its April meeting.

of our NYCPS community to be subjected to such treatment, and as I have repeatedly emphasized, we do not tolerate hate or bigotry in our schools and school communities. CECs are not expected to simply tolerate such behavior, and I acknowledge that although supports were offered, you did not feel safe.

I note that these supports included not only increased security, but also the presence of the trustees to support the Council's ability to meet in a hybrid format (which would allow for a quorum to be present and those who felt most unsafe to participate virtually) as well as multiple invitations for the CEC to offer suggestions on what would make it feel safe. We also encouraged you to reach out to Chief of Safety and Prevention Partnerships Mark Rampersant; he advised that he did not hear from you. What we ultimately cannot offer as a support is for the Council to continue to meet fully remotely, as doing so is not permitted under state law.

I also want to make very clear that you are not being penalized for speaking out against injustice or oppression, supporting a ceasefire, or wanting to center marginalized voices. Neither the April 16 order nor the D-210 determination is about anyone's views or opinions about the crisis in the Middle East, and not about taking sides. While I condemned the horrific acts of violence that occurred on October 7, I have consistently focused on the rights of *all* children in the region, and the world, to live in peace, and with security and dignity. I have also emphasized the need for adults to teach and model tolerance and inclusion, and to fight hate, violence, and injustice in all its forms. In short, I have not "taken a side," and continue to call for compassion, safety, and respect for all.

For example, I sent a communication on October 17, 2023, after the horrific murder of six-year-old Palestinian-American Wadea Al-Fayoume, who was targeted in a hate crime motivated by the conflict in the Middle East. I reiterated that our schools must be spaces where every single student and staff member feels respected and valued, and that hate has no home in our schools. I emphasized our commitment to fostering trust and to honoring the backgrounds, identities, and experiences of all our staff and students. I prayed and still do for peace and stability for all.

The November 8 email you mention was intended to provide clear and direct guidance to staff about how to express their personal views consistent with their responsibilities as public school employees. I again repeated the need to come together, promote values of inclusivity and diversity, and ensure our learning and work environments are safe, supportive, and free from hate or intolerance. The message included links to guidance and policies around social media usage and civic engagement, in response to questions we had been receiving from schools and staff about what is allowed and how to ensure student safety.

These messages, among others, reflect my conviction that as leaders within our school system, we must—especially in the face of crisis, conflict, and trauma—come together and work together to support *all* our families and students. It is incumbent on NYCPS leaders, including parent leaders, to show empathy rather than stoke division, and not add to the hostility or trauma many in our school communities are experiencing. Your conduct has not been consistent with the values of inclusion and empathy for all that we prioritize. As an example, referring to those who disagree with you as "local Zionists" and accusing them of "vile" conduct offends and excludes the many community members who support the existence of the state of Israel as a refuge for Jews,

4

as well as their allies.  Your actions have justifiably been perceived by many community members as anti-Israel and antisemitic, and have led to numerous complaints to NYCPS and other bodies.

Similarly, while we support our students' and our CEC members' First Amendment rights, we also prohibit engaging in harassing or discriminatory behavior.  As was discussed at the May 28 conciliation and as I stated during my testimony before Congress, phrases that are widely understood to be antisemitic – regardless of a specific speaker's intent – are not allowed in our schools (one such example is "From the river to the sea, Palestine will be free"). Accordingly, we must take action when councils disseminate and endorse material containing such messages.

Regarding the Brooklyn Arbor personnel matter, even if your involvement was at parents' behest, it was inappropriate and in tension with the Education Law.  You disseminated letters containing false and divisive claims and pushed for others to do so.  You acknowledged passing out the flyer referenced in my April 16 order, a flyer that links to a document that explicitly accuses Brooklyn Arbor parents and community members of "targeted attacks" on the employee, including "doxx[ing] him on social media, falsely conflating his support of Palestine with accusations of anti-semitism, and [feeding] incendiary and false information to the NY Post resulting in a hit piece that lead [*sic*] to threats to [the employee's] physical safety, and hateful, slanderous speech that has taken an emotional toll."  Distributing this information, which you did on site at Brooklyn Arbor on March 7 and 8, goes beyond holding signs and flowers and hugging the employee.  Your conduct, once again, was contrary to the values of inclusion and empathy, and instead stoked conflict and division in the school and district community.  Even if you believed you were standing against perceived discrimination and bias, you could have done so without making incendiary accusations against families and staff.  Moreover, involvement in a specific employee's personnel matters is distinguishable from advocating for the general retention of a district position, particularly since the public is not privy to the particular facts involved in personnel matters, as you also were not in this case.

I also disagree that my April 16 order or the D-210 determination were discriminatory, or that laws or regulations have been applied to you in a discriminatory manner.  Moreover, while you stated that D-210 complaints you filed were not followed up on, I am advised that we do not have records of any D-210 complaints filed by you. Mechanisms for reporting any allegations of discrimination continue to be available to you as set forth in Chancellor's Regulation D-210 and Chancellor's Regulation A-830.

In sum, for the reasons set forth above and in my April 16 order, I conclude that under your leadership, CEC 14 has failed to comply with numerous legal requirements.  These include:
- failing to comply with OML requirements by repeatedly failing to hold in-person or hybrid meetings in direct contravention of my prior orders and in spite of repeated guidance about legal requirements and offers to provide safety supports;
- failing to comply with Education § 2590-e(14) by failing to hold public meetings at all in February, March, and May; and
- failing to comply with Education Law § 2590-c and Chancellor's Regulation D-140 by failing to fill CEC vacancies for more than 60 days, in spite of having candidates for such vacancies.

5

As a community education council president, you are expected to support the Council's performance of its powers and duties and its compliance with applicable laws, rules, regulations, and directives. In spite of prior orders, two conciliations, and repeated guidance and offers of support, the CEC has remained out of compliance with the OML and Education Law—including conducting yet another fully remote meeting in April, not holding its required monthly meeting in May, and scheduling another fully remote meeting in June. While you have characterized OML compliance as a technicality, it is among the requirements for how the Council must conduct its business under state law; non-compliance means that the Council's actions could be declared null and void. And in fact, these requirements are not technicalities, but critical safeguards to ensure robust community access to and participation in key school district leadership discussions and decisions. In short, compliance with this state law requirement is a critical piece of effectively conducting business.

While I do not condone the treatment that you and the Council have been subject to by some participants at your virtual meetings, I must also take action when councils or council members persistently violate legal requirements. I note that CEC 14 has refused to meet in person since July 2023, and is the only CEC that has remained virtual and has made no attempt to hold even a hybrid meeting. I also note that you and other CEC 14 members regularly appear in person at other meetings, schools, and protests.

Finally, you did not dispute your involvement in a personnel matter at Brooklyn Arbor. Under Education Law § 2590-l(2-a), a community education council member may be removed upon a finding that the member intentionally or knowingly interfered with or was involved in the assignment of employees other than as specifically authorized in the Education Law. Such a finding permanently disqualifies that member from working with NYCPS or any NYCPS district or school, and from membership on any community education council or the citywide board (i.e., the Panel for Educational Policy). While I do not find that your conduct *clearly* violated this provision of the Education Law, which focuses on hiring, appointment, and assignment, its stated prohibition and the severe consequences attached to it supports the conclusion that it is highly inappropriate for CEC members to become involved in a school's personnel matters or to seek to influence personnel actions.

Your involvement in the personnel matter included holding signs outside Brooklyn Arbor on two separate days during dismissal time and passing out flyers to *students* about the employee. Parents expressed concern for their children's safety at Brooklyn Arbor and said the protests caused their children to feel fearful. As stated in my order, our number one priority is our students' safety and wellbeing, and your actions led parents to question their children's safety at an NYCPS school, which is completely unacceptable.

Given the numerous violations of law and regulations as set forth above, the appropriate disciplinary action is your removal from the Council for the remainder of the current term. You may not serve on CEC 14 during this removal period.

Accordingly, pursuant to my authority under Section 2590-l of the Education Law, I am enforcing my April 16, 2024 order by removing you from CEC 14 through June 30, 2025, effective immediately.

IT IS SO ORDERED.

*David C. Banks*

_____

David C. Banks
Chancellor

cc: Kenita Lloyd
Liz Vladeck
Toni Gantz
Cristina Melendez