# EXHIBIT N



**Public Schools**
Chancellor David C. Banks

---------------------------------------------------------------- x

In the Matter of the

**Appeal of Chancellor's Order
Removing Maud Maron**

**VERIFIED ANSWER**

---------------------------------------------------------------- x

To the New York City Board of Education (Panel for Educational Policy, or "PEP"):

    Respondent, the Chancellor of the New York City Department of Education ("DOE"), by his attorney Liz Vladeck, DOE General Counsel, as and for his answer in response to the appeal of the Chancellor's Order dated June 14, 2024, removing Community Education Council 2 ("CEC 2") member Maud Maron ("Appellant") for the remainder of her term (the "Order"), respectfully submits the following in support of the issuance of the Order. Attached to the answer are supporting exhibits referenced herein.

    Upon information and belief, Appellant submitted her statement of appeal by email to PEP Chairperson Gregory Faulkner on or about June 27, 2024 (the "Appeal"). Appellant requested a stay of enforcement of the Order pending a final determination of the Appeal pursuant to 8 NYCRR § 113.7, and an expedited review of this matter. Respondent will address these applications and other procedural matters before turning to the merits of the Appeal.

    First, Respondent opposes Appellant's request for a stay of enforcement of the Order. For the reasons discussed below, there are no grounds upon which to overturn the Order, and thus, no basis to stay its enforcement. To the extent that Appellant argues a stay is necessary so that she may participate in an upcoming CEC 2 meeting where the council will hold internal elections for officers, this argument is meritless. Appellant presupposes that she may be elected as an officer despite the fact that she did not hold any office prior to her removal. Her suggestion that she would be elected as a CEC 2 officer if the stay were issued is purely speculative.

    Second, Respondent reserves his right to respond in the timeframe set forth in 8 NYCRR § 113.10. Respondent does not oppose the PEP's expedited review of this matter to the extent that Appellant seeks to waive her right to submit a reply, and/or the PEP does not direct oral argument and agrees to render a decision earlier than 30 days after the last filed appeal paper.

Third, the Appeal must be dismissed due to several procedural defects. Upon information and belief, Appellant failed to file the Appeal with the secretary of the PEP as required by 8 NYCRR §§ 113.3 and 113.17. Furthermore, Appellant did not serve her Appeal by certified mail or personal service on Respondent as required by 8 NYCRR § 113.16(a), nor has the Appeal been verified as required by 8 NYCRR § 113.15. The Appeal also did not contain Appellant's address and phone number as required by 8 NYCRR § 113.12. Thus, the Appeal must be dismissed for failure to comply with the procedural requirements set forth in the applicable Regulations of the New York State Commissioner of Education. The Commissioner routinely dismisses appeals that fail to comply with procedural requirements and the PEP should do the same. *Cf. Appeal of Hanifin*, 63 Ed Dept, Decision No. 18384, 2024 WL 1109036, *1 (Feb. 27, 2024 N.Y.S.E.D.) (dismissing petition for failure to serve school district respondent properly); *Appeal of M.J.*, 62 Ed Dept, Decision No. 18276, 2023 WL 4654966, *1 (May 17, 2023 N.Y.S.E.D.) (dismissing appeal where petition was not verified by petitioner as required).

The Appeal must also be denied on the merits.

Reasons for the Chancellor's June 14, 2024 Order

The Chancellor, pursuant to his authority under Section 2590-l of the New York Education Law, issued the Order removing Appellant, effective immediately, for the remainder of her term on CEC 2. A true and correct copy of the Order is attached hereto as Exhibit A. Appellant was removed for engaging in conduct involving derogatory and offensive comments about a DOE student, and conduct that serves to harass, intimidate, or threaten, including but not limited to frequent verbal abuse and unnecessary aggressive speech that serves to intimidate and cause others to have concern for their personal safety, in violation of Chancellor's Regulation D-210, Citywide and Community Education Council Code of Conduct and Complaint Procedures: Anti-Discrimination and Anti-Harassment Policy ("D-210"), Sections (II)(C) & (D). *See id.*

As set forth more fully in the Order, on February 16, 2024, Stuyvesant High School's ("Stuyvesant") student newspaper, *The Spectator*, published an editorial by an anonymous student titled "Black and White: The Withheld History of Palestine and Israel." On February 24, 2024, *The New York Post* published an article concerning that editorial ("*The Post* Article") and quoted Appellant, a parent of a Stuyvesant student and a member of Stuyvesant's school leadership team, as stating: "The byline should read coward instead of anonymous. If you are going to repeat revolting Hamas propaganda and transcribe your ignorance and Jew hatred, put your name to it."

DOE's Office of Family and Community Engagement ("FACE") received several complaints regarding Appellant's statement and launched an investigation under D-210. Witnesses were interviewed and evidence was collected and reviewed. DOE made several attempts to schedule an interview with Appellant regarding the allegations, but she declined to participate in the investigation. The investigation found that Appellant's statement in *The Post* Article constituted conduct involving derogatory and offensive comments about a student, and unnecessary aggressive speech that served to intimidate and cause others to fear for their personal safety. The investigation further found that Appellant's conduct created a foreseeable risk of disruption within the district and school community, especially in light of the forum in which it was made.

On April 17, 2024, Deputy Chancellor of Family and Community Engagement + External Affairs, Kenita Lloyd, issued a determination that Appellant's statement in *The Post* Article violated D-210(II)(C)&(D), and ordered Appellant to cease engaging in the prohibited conduct at issue (the "D-210 Determination"). A copy of the D-210 Determination is attached hereto as Exhibit B. On April 18, 2024, Appellant sought clarification regarding "what words you want me to stop saying," and on the same day, FACE responded that the determination was based on Appellant's comments in *The Post* Article.

Pursuant to New York Education Law § 2590-l(1)(b) and D-210(IV)(E), Appellant was offered the opportunity to engage in a conciliation. On May 21, 2024, Appellant, accompanied by her attorney and a parent witness, attended a conciliation with First Deputy Chancellor Daniel Weisberg, Deputy Chancellor Lloyd, FACE Executive Director Cristina Melendez, General Counsel Liz Vladeck, and Executive Deputy Counsel Toni Gantz. Deputy Chancellor Lloyd reviewed the basis for the D-210 Determination, Appellant's statement in *The Post* Article, the findings of the investigation, and the provisions of D-210 that Appellant was found to have violated.

During the conciliation, Appellant likened her reference to "Jew hatred" to the Chancellor's identifying "from the river to the sea, Palestine will be free" as an anti-Semitic phrase during his May 6, 2024 congressional testimony. Ultimately, Appellant stood by and defended her statement in *The Post* Article.

As explained in the Order, the Chancellor's denunciation of anti-Semitism is wholly distinguishable from Appellant's attack on a specific DOE student. The Chancellor noted that Appellant failed to recognize that her conduct was totally inconsistent with the expectations of the behavior of parent leaders—namely, that parent leaders who represent DOE school communities and serve parents and students must not engage in conduct that serves to intimidate or causes others to have concern for their personal safety, and must not engage in public, personal attacks on DOE students.

Moreover, the Chancellor found that, as a parent of a Stuyvesant student and a member of the Stuyvesant's school leadership team, there were many avenues available to Appellant to express her concerns or criticisms about *The Spectator* student editorial. Nonetheless, Appellant opted to make a derogatory statement against the student author in a national media outlet, foreseeably prompting a wave of hostile and violent comments against the student author and other Stuyvesant students. Indeed, *The Post* Article featuring appellant's statement generated hundreds of comments, including aggressive and threatening comments directed towards the student author and Stuyvesant students generally, such as:
- "In the age of the internet; may these dogs be hunted down"
- "In the West Bank they string traitors up on lamp posts. Maybe we can bring a little of that Middle East culture here?"
- "I LOVE ISRAEL. I HATE PALESTINIAN CIVILIANS, REGARDLESS OF AFFILIATION. I WISH IMMEDIATE HARM ON THOSE MINORS INVOLVED IN THE PRODUCTION OF THIS ARTICLE."

3

Upon consideration of the D-210 Determination, Appellant's response during the conciliation, and other publicly available information, the Chancellor determined that the appropriate disciplinary action was the removal of Appellant from CEC 2 for the remainder of the current term.

In her Appeal, Appellant denies that she targeted any student. However, her comment in *The Post* Article directly refers to the author of the editorial in a student-run newspaper. As the Order notes, other information available to Appellant, such as *The Spectator*'s response to criticism regarding the student editorial, also made clear that the author was a student. To the extent Appellant is claiming she did not know the author was a student, such claim is disingenuous and self-serving. Moreover, even after receiving confirmation that the author was a student, Appellant repeatedly defended her statement, as she does in the Appeal.

Appellant further argues that her characterization of the anonymous student author as a "coward" is similar to Mayor Adams's characterization of masked protesters. However, Mayor Adams's comment was made in the context of a proposed legislation ban on masks to promote safety during protests. By contrast, Appellant's statement had nothing to do with promoting the safety of the school or community school district, and in fact it created safety concerns at Stuyvesant. Indeed, as noted in the Order, *The Spectator* explicitly permits the publishing of anonymous articles to ensure the safety of writers.

Finally, Appellant contends that the Order relied upon the comments to *The Post* Article, which Appellant did not write. Appellant misconstrues the Order; the comments to the article were included merely to illustrate the foreseeable risk of disruption to the school community created by her statement. As explained in the Order, the determination to remove Appellant was based on her conduct, which served to intimidate and cause others to fear for their safety, and which amounted to an attack on a DOE student.

Statutory Authority for the Order

Pursuant to Education Law Section 2590-l(1)(a), if the Chancellor, in his judgment, determines that there has been a failure to comply with any applicable provisions of law, by-laws, rules or regulations, standards, directives, or agreements, the Chancellor has the authority to issue an order to cease improper conduct, and to enforce such an order by removing an individual council member. *See* N.Y. Educ. L. § 2590-l(1)(a)(ii). Prior to enforcement of such an order, the Chancellor must provide an opportunity for conciliation except in certain circumstances not applicable to these facts. *See* N.Y. Educ. L. § 2590-l(1)(b).

The Order removing Appellant from CEC 2 is in full compliance with the requirements of Education Law Section 2590-l. The Chancellor determined that Appellant failed to comply with D-210(II)(C)&(D), a regulation applicable to all community and citywide education council members, including Appellant. Consistent with his authority under Section 2590-l and D-210, the D-210 Determination ordered Appellant to cease her improper conduct. Following the conciliation process set forth in Section 2590-l(1)(b), the Chancellor reasonably determined that the D-210 Determination should be enforced by removal of Appellant from CEC 2 for the remainder of her term, and he then issued the Order accordingly.

Based on the foregoing, the Appeal should be dismissed.

Dated: New York, New York
July 8, 2024

_____
Liz Vladeck
Attorney for Respondent
General Counsel to the Chancellor
52 Chambers Street, Rm. 320
New York, NY 10007
212-374-3440

# VERIFICATION

STATE OF NEW YORK        )
                         :   SS.:
COUNTY OF NEW YORK       )

**David C. Banks,** being duly sworn, deposes and says that he is Respondent in this appeal; that he has read the annexed Verified Answer and knows the contents thereof; that the same is true to the knowledge of deponent except as to the matters therein stated to be alleged on information and belief, and as to those matters he believes them to be true.

*[signature]*

**David C. Banks**
**Chancellor**

Subscribed and sworn to before me this
____8____ day of __July__, 2024

*[signature]*
NOTARY PUBLIC

KERI MOORE
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01MO0015097
Qualified in Kings County
Commission Expires October 27, 2027