

August 29, 2024

The Hon. Diane Gujarati
U.S. District Judge
225 Cadman Plaza East
Brooklyn, NY 11201

    *Via ECF*

    Re:    *Alexander v. Sutton*, No. 1:24-cv-2224-DG-JRC

Dear Judge Gujarati:

    At the conclusion of the August 27 settlement conference, Judge Cho ordered each party to "file a status report with respect to the issues currently pending before the Court" by 5:00 PM on August 28. The reports' main purpose was to update the Court about recent developments disclosed in the ex parte settlement letters, such as the PEP's August 19 denial of Maud Maron's administrative appeal. Plaintiffs and the individual-capacity CEC 14 Defendants complied with that order. See Dkt. 65; Dkt. 63.

    But DOE Defendants' status report contains new information not previously disclosed to Plaintiffs and not, to their knowledge, discussed with the Court at the settlement conference; misrepresented the contents of DOE Defendants' purported settlement "offer" in an effort to persuade the Court to deny Plaintiffs relief; and otherwise misused Judge Cho's order as an occasion to file a letter brief opposing Plaintiffs' preliminary injunction motion.

    DOE Defendants' objective is to persuade the Court that settlement is, as ever, just around the corner, and there is no need for a preliminary injunction. Not true. Judge Cho's order correctly noted that the "Parties are far apart on settlement." DOE Defendants' latest filing pushes the parties even further apart, if that were possible. Nor is it true that DOE Defendants' fuzzy promises of voluntary cessation could obviate the need for injunctive relief. Inherent in them is an admission that the current provisions are unconstitutional and need changing. And the voluntary cessation doctrine operates to block Defendants' transparent attempt to manipulate the Court's jurisdiction.

    Plaintiffs are constrained to set the record straight. "[F]urther progress," Dkt. 64 at 3, is not possible, because there hasn't yet been *any* progress. And there will not be any progress until the Court decides the preliminary injunction motion.

    *First* – At no time before the filing of DOE Defendants' status report did DOE Defendants communicate to Plaintiffs an intention to suspend enforcement of any part of Regulation D-210. Plaintiffs learned about this alleged waiver when they read the DOE's filing last night. Indeed, the supposed waiver is only effective as of yesterday, August 28 – not only the day after the settlement conference, but also over two months after the argument on Plaintiffs' preliminary injunction motion, and over five months since the filing of this lawsuit. The parties

spent nearly four hours in court on August 27 – *that* was the time to discuss new ideas. But Defendants never mentioned it then, because their purpose is delay, not discussion.

<u>Second</u> – The supposed enforcement suspension is neither credible nor complete. Defendants apparently have no plans to waive enforcement of Section II(E) of Regulation D-210, see Dkt. 64 at 2, even though Plaintiffs have challenged that section as well, Dkt. 13 at 2, and testified to the chill on free speech it causes, see, e.g., Dkt. 13-3, ¶¶ 20-31, 37-38.

More critically – if Defendants truly wanted to suspend Regulation D-210's enforcement, they would begin by un-enforcing it against Maud Maron. But they haven't.

DOE Defendants can say or do whatever they want, but so long as Maron is out of office, that fact, standing alone, tells Plaintiffs everything they need to know about Regulation D-210's threat to free speech. After all, Maron was removed under the very sections that Defendants allege they will revise. See Dkt. 64 at 2-3; Dkt 63-1 at 2. If the DOE intends to propose changes that still permit Maron's removal, then these changes, even if enacted, would obviously be inadequate to protect Plaintiffs. And the DOE has not actually waived enforcement if it continues to keep Maron out of her elected office on the grounds of the exact same unconstitutional provisions.[*]

Absent Maud Maron's restoration to her rightful office, any settlement discussions are pointless. And her removal is a feature of the preliminary injunction dispute.

<u>Third</u> – Defendants cannot guarantee that any revision of Regulation D-210 will ever occur. The DOE admits that it "cannot unilaterally or immediately revise the regulation, because revisions to Chancellor's Regulations require both a 45-day public notice and comment period as well as approval by the PEP." Dkt. 64 at 3. The PEP may reject the proposed revisions or the DOE may decide to rescind its proposals because of hostile public comments.

Defendants do not even supply the text of their proposed revisions, so neither Plaintiffs nor this Court can evaluate whether these changes would resolve the constitutional problems, even before considering the voluntary cessation doctrine (*see infra*). For all Plaintiffs know, the revisions might make the regulation worse.

And although Plaintiffs challenge viewpoint discrimination at CEC 14's public meetings and prior restraint on access to CEC 14's official X account, the best that the DOE can state to this Court is that "Defendants are *hopeful* they can make an offer to Plaintiffs this week or early next week concerning the X account and CEC 14 meetings" as "[p]rogress was made" on DOE's disagreements with the individual-capacity CEC 14 Defendants. Dkt. 64 at 2 (emphasis added). The time for Defendants to make their offer was, at the latest, at the settlement

---

[*] Nor is it an answer to tell Maron to run for office again. She has been elected for *this* term, and she and her constituents are irreparably injured every moment she is not on the council. She would also be injured running for an office from which she was removed for allegedly violating the law, as opposed to running with judicial confirmation that her removal was unlawful.

conference earlier this week. Whatever progress occurred was clearly not enough for Defendants to actually make an offer.

Instead, Defendants once again claim that they need more time—more than the two months between oral arguments on the motion for preliminary injunction and yesterday's settlement talks or the two weeks between the original date for those talks and the date it was rescheduled for, at the DOE's insistence. *See* Dkt. 58. Defendants are just stringing Plaintiffs along.

<u>Fourth</u> – A mere promise to change the law, or to suspend its enforcement, is worthless under the voluntary cessation doctrine. Even if Defendant Banks restored Maron to her office, a court order is necessary to ensure that Defendants will not "return to [their] old ways." *FBI v. Fikre*, 601 U.S. 234, 241 (2024) (internal quotation marks omitted). DOE Defendants' letter brief argues that this Court should not enjoin unconstitutional actions because the DOE will try to voluntarily cease from a few of these actions. But "it is the defendant's burden to establish that it cannot reasonably expected to resume its challenged conduct." *Id*. at 243 (internal quotation marks omitted). Defendants must show that "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation omitted). When voluntary cessation "would permit a resumption of the challenged conduct as soon as the case is dismissed," "an injunction provides effectual relief because it precludes the defendant from reviving the challenged conduct in that manner." *Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 109 (2d Cir. 2016) (cleaned up).

Defendants have not carried and cannot carry their "formidable burden." *Already*, 568 U.S. at 91 (citation omitted). Chancellor Banks can renege on his last-minute one-day-old promise to not enforce D-210's provisions as quickly as he made it. The PEP might reject the proposed revisions, or the DOE might decide—after hostile public comments—that changing Regulation D-210 would be too politically unpopular. The DOE and the CEC 14 Defendants may fail to make any more progress on formulating an offer. At the bottom, the DOE's letter brief simply says, "trust us—we won't keep violating rights." But the DOE has done nothing to deserve this trust, as Maud Maron's continuing removal demonstrates.

<u>Fifth</u>  -- DOE Defendants have *not* "offered substantive concessions concerning D-210." Dkt. 64 at 3. Over a month ago, on July 25, Defendants communicated a putative settlement offer that offered Plaintiffs nothing. Plaintiffs explained that this was not an offer, and rejected it as a basis for negotiations. Dkt. 60 at 1. Defendants have not since communicated any other putative offer. This is a pattern with DOE Defendants. They made their non-offer "offer" on July 25 so that they might claim to be negotiating in the July 26 status report. And now, the day after the settlement conference, they claim that they "offered substantive concessions concerning D-210" when in fact, they did no such thing.

Defendants are invited to publish their July 25 "offer," so that the Court can determine whether it actually contains any "substantive concessions."

And since Defendants only want to pretend that they are negotiating in order to use those assertions against Plaintiffs, settlement negotiations are now over. Plaintiffs will not discuss settlement with Defendants or consider any "offers" until their preliminary injunction motion is decided. Moreover, as Plaintiffs have repeatedly advised, there is no chance that they will accept a resolution of this case "without Court-ordered intervention." Dkt. 64 at 3. Any settlement would have to be confirmed by a consent decree.

*     *     *

Plaintiffs require immediate relief. "It is well established that the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Kamerling v. Massanari*, 295 F.3d 206, 214-15 (2d Cir. 2002) (internal quotation marks omitted). Maron's injury under Regulation D-210 is real, immediate, and irreparable, as is that injury to the other committee members who are chilled by her example, and to the general public, whose elected representatives cannot represent them because they are either removed from office or unable to freely express themselves. Plaintiffs and the general public are also injured irreparably by the fact that a school board in Brooklyn blatantly discriminates against speakers and public meeting attendees based on their viewpoints and political associations, and maintains an unlawful prior restraint on its social media account.

Respectfully, the Court should immediately issue the preliminary injunction.

Sincerely,

/s/ Alan Gura
Alan Gura
Counsel for Plaintiffs

cc:   All counsel via ECF